UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

YAROSLAV CHURUK,
*Plaintiff*,

v.

M. CANAROZZI *et al.*,
*Defendants*.

No. 3:22-cv-1395 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Yaroslav Churuk is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"). He has filed a complaint *pro se* and *in forma pauperis* asserting violations of his constitutional rights against a number of prison officials at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). Churuk seeks declaratory and injunctive relief, as well as monetary damages. After an initial review of the complaint pursuant to 28 U.S.C. § 1915A, I conclude that some of his claims may proceed against some of the named defendants but that the rest of his claims should be dismissed.

**BACKGROUND**

I accept as true the following allegations from the complaint. On September 28, 2022, Churuk was placed in the Special Housing Unit ("SHU") at FCI Danbury on a charge of insolence.[1] According to Churuk M. Breece, a case officer at FCI Danbury, conspired with M. Canarozzi, a counselor at FCI Danbury, to place him in the SHU in retaliation for requesting a BP-8 grievance form, expressing his intent to file a civil lawsuit, and refusing to sign team papers.[2] Canarozzi interpreted his intention to file a lawsuit "as a threat," and Breece refused to help him file his administrative claims.[3]

---

[1] Doc. #1 at 5 (¶1).
[2] *Ibid.* (¶¶ 1–3).
[3] *Ibid.* (¶ 3).

1

While in the SHU, Churuk went on a hunger strike and was transferred to suicide watch.[4] Then Churuk "fell into a coma and had to be sent to the hospital."[5] After he regained consciousness, Churuk lost his ability to speak.[6] Pate, an officer at FCI Danbury, became frustrated when Churuk would not respond verbally and physically assaulted him, "causing bruises."[7]

While Churuk was on suicide watch he repeatedly asked to speak to Werner Escobar, a nurse at FCI Danbury, about heart pain, dizziness, and headaches, but he received no response.[8] When Churuk returned to FCI Danbury, Dr. Robert Greene also refused to see him after he complained about heart pain and dizziness.[9] The delay caused Churuk's "internal organs [to] feel like [they were] on fire."[10]

Churuk also generally claims that the "administration will not allow me to file my BP-8 or BP-9" forms seeking administrative remedies.[11] Canarozzi rejected his BP-8 form, and Captain Smith told him that he "must change the subjects name on the complaint" before they would "accept the remedy."[12]

Churuk seeks $5 million in compensatory and punitive damages.[13] He also seeks injunctive relief including a formal apology from defendants, a transfer to a medical facility, and an order that FCI Danbury refrain from retaliatory conduct.[14]

---

[4] *Ibid.* (¶ 3).
[5] *Ibid.*
[6] *Id.* at 6 (¶ 4).
[7] *Ibid.*
[8] *Ibid.* (¶ 6).
[9] *Ibid.* (¶ 5).
[10] *Ibid.* (¶ 7).
[11] *Ibid.* (¶ 9).
[12] *Ibid.* (¶ 10).
[13] *Id.* at 6.
[14] *Ibid.*

**DISCUSSION**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.[15] 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to raise the strongest arguments they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Churuk brings this action against the federal officer defendants in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized an implied right of action for damages against federal officers who have violated a person's constitutional rights. *See McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016) (*per curiam*).

***Excessive force***

The Eighth Amendment prohibits the use of excessive force against a prison inmate. "Although not every malevolent touch by a prison guard gives rise to a federal cause of action,

---

[15] Unless otherwise noted, this ruling omits all internal quotation marks, citations, brackets, and other alterations in its quotations and citations of case decisions.

inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

To state a claim for excessive force under the Eighth Amendment, "a prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind and that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (citing *Harris v. Miller*, 818 F.3d 49, 63-64 (2d Cir. 2016)). The Court assumes for present purposes (and without prejudice to the defendants' right to contest the issue at a later time) that *Bivens* liability extends to an Eighth Amendment claim for the use of excessive force. *See Ziglar v. Abbasi,* 582 U.S. 120, 140 (2017); *Akande v. Philips*, 2018 WL 3425009, at *9 (W.D.N.Y. 2018).

Churuk alleges that Pate became frustrated when Churuk could not speak and physically assaulted him, causing bruises. On these facts it is plausible to conclude that Pate used serious force for malicious or sadistic reasons, rather than "in a good-faith effort to maintain or restore discipline." *Harris v. Miller*, 818 F.3d 49, 63–64 (2d Cir. 2016); *Rivera v. Tiernan*, 2019 WL 109345, at *1 (D. Conn. 2019) (prisoner's claim that the defendant "punch[ed]" and "kick[ed]" him which resulted in "bruising" stated a plausible claim under the Eighth Amendment). Thus, I will allow Churuk's *Bivens* claim for the use of excessive force to proceed against Officer Pate.

### *Deliberate indifference to medical needs*

Churuk additionally claims that Escobar and Dr. Greene were indifferent to his medical needs when they refused to see him after he complained of heart pain and dizziness.

The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 492 U.S. 97, 104 (1976). A *Bivens* claim for liability against a federal officer may be premised on a claim of

4

deliberate indifference to a serious medical need. *See, e.g.*, *Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006).

A prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an objective requirement—the prisoner's medical need must have been sufficiently serious (*i.e.*, that the prisoner suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain). *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Churuk alleges that he experienced heart pain, dizziness, and headaches and contends that, his "internal organs fe[lt] like the[y were] on fire" as a result of delayed medical care.[16] Churuk has plausibly alleged an objectively serious medical need.

Second, there is a subjective requirement: the defendant must have acted recklessly (*i.e.*, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action). *See Spavone*, 719 F.3d at 138. Prison officials must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).

Churuk does not allege facts to show that either Escobar or Dr. Greene were actually aware of a substantial risk of serious harm when they declined to see him. Churuk alleges that he made repeated requests to speak with Escobar, complaining of heart pain, dizziness, and headaches. Similarly Churuk claims that Dr. Greene "abandoned" him when he expressed heart pain and dizzy spells. But simple negligence or carelessness akin to ordinary medical malpractice is insufficient to support a claim for deliberate indifference. *See Chance v. Armstrong*, 143 F.3d

---

[16] *Ibid.* (¶ 7).

698, 703 (2d Cir. 1998). Churuk does not show that either Escobar or Greene knew that Churuk would suffer increased levels of pain when they allegedly ignored his requests, nor does he show that he contacted them after his pain escalated. He has not plausibly alleged that either defendant acted with subjective recklessness as distinct from negligence. Accordingly I will dismiss Churuk's deliberate indifference claim as to Escobar and Dr. Greene.

### *First Amendment retaliation*

Churuk next alleges that Canarozzi and Breece retaliated against him after he refused to sign team documents and expressed his desire to file a lawsuit. "[T]here is no *Bivens* action for First Amendment retaliation." *Egbert v. Boule*, 132 S. Ct. 1793, 1808 (2022). Accordingly I will dismiss Churuk's First Amendment claim against Canarozzi and Breece.

### *Interference with administrative remedies*

Churuk additionally claims that the defendants prevented him from exhausting his administrative remedies. A *Bivens* remedy is available only for the violation of constitutional rights. *See McGowan*, 825 F.3d at 123. Prisoners do not have a constitutional right to administrative remedy procedures. *See Lopez v. McGill*, 2009 WL 179787, at *6 (D. Conn. 2009) (the "denial of access to the grievance process … does not by itself give rise to a constitutional violation"). I will therefore dismiss the claim for interference with administrative remedies.

### *Official capacity claims*

Churuk does not specify whether he has named the defendants in their individual or official capacities. Because the "only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities," the Court considers defendants to be named in their individual capacities only. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). In any event, any official-capacity claim against the defendants or the

BOP itself would be barred by sovereign immunity. *See Barnhill v. Terrell*, 616 F. App.'x 623, 625 (2d Cir. 2015).[17]

*Injunctive relief*

Finally, Churuk requests injunctive relief including an order enjoining the defendants from engaging in retaliatory conduct.[18] But a *Bivens* action is limited to money damages only. *See Rodriguez v. Easter*, 2022 WL 356478, at *3 (D. Conn. 2022).

### CONCLUSION

In accordance with the foregoing discussion, the Court enters the following orders:

(1) Churuk's Eighth Amendment claim for excessive force shall proceed against Officer Pate in his individual capacity.

(2) All other claims and defendants to this action are DISMISSED.

(3) Churuk's motion for appointment of counsel (Doc. #4) is DENIED without prejudice for lack of an adequate showing at this time that his claims have a sufficient likelihood of merit to warrant the appointment of counsel. *See Hendricks v. Coughlin,* 114 F.3d 390, 393 (2d Cir. 1997); *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1983).

(4) The Clerk shall mail a waiver of service of process request packet containing the complaint to the defendant at his place of employment, FCI Danbury, 33½ Pembroke Road, Danbury, CT 06811, **within twenty-one (21) days of this Order**, and report to the Court on the status of the waiver requests by not later than **the thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(5) The defendant shall file his response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms is mailed to him.

(6) The Clerk shall deliver three copies of the summons and complaint to the United States Attorney for the District of Connecticut, at any one of the three offices, send two copies of the summons and complaint by registered or certified mail to the Attorney

---

[17] Churuk does not name the BOP as a defendant in the caption of his complaint but states in the body of his complaint that "I sue the F.B.O.P. for hiring violent personnel[]." *Id.* at 6. But the BOP—as an agency of the United States—is not subject to suit under the Federal Tort Claims Act. *See Mignonga v. Sair Aviation,* 937 F.2d 37, 40 (2d Cir. 1991).

[18] Doc. #1 at 2, 6.

General of the United States at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, and send a copy of the summons and complaint by registered or certified mail to the Bureau of Prisons at 320 First Street, N.W., Washington, D.C. 20534.

(7) The discovery deadline is extended to **six months (180 days) from the date of this Order**. The deadline for summary judgment motions is extended to **seven months (210 days) from the date of this Order**.

(8) All motions for summary judgment shall be filed **within seven months (210 days) from the date of this Order**.

(9) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(10) If Churuk changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Churuk must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify the defendants or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered. Dated at New Haven this 24th day of May 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge