UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

YAROSLAV CHURUK,
     Plaintiff
    v.
M. CANNAROZZI, M. BREECE,
A. PATE, DR. ROBERT GREENE,
WERNER ESCOBAR, P.A.
CAPTAIN T. SMITH,
    Defendants

:
:
:
:
:
:
:
:

Case No: 3:22-cv-1395 (JAM)

AMENDED CIVIL COMPLAINT

## CIVIL COMPLAINT

Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. §§1331, 1346(a), the First and Eighth Amendment to the United States Constitution, and under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) to redress deprivation, under the color of law, rights secured by the constitution of the United States of America. Plaintiff seeks compensatory damages as well as punitive damages.

2. The District of Connecticut is an appropriate venue under 28 U.S.C. §1391(b)(2) because it is where the events giving rise to this claim occurred.

3. Plaintiff has also filed a large number of administrative remedies regarding the same.

### PARTIES

4. Plaintiff, Yaroslav Churuk, was at all times relevant, was an inmate at FCI Danbury.

5. Defendant M. Breece, at all times relevant, was Plaintiff's Case Manager at FCI Danbury.

6. Defendant A. Pate, at all times relevant, was a custody officer working at FCI Danbury.

7. Defendant Robert T. Greene, at all times relevant, was a PA employed at FCI Danbury. He is also a medical administrator for FCI Danbury.

8. Defendant Werner Escobar, was at all times relevant, was a physicians assistant employed by FCI Danbury.

9. Defendant M. Canarozzi, at all times relevant, was Plaintiff's correctional counselor at FCI Danbury.

10. Defendant T. Smith, at all times relevant, was a captain at FCI Danbury.


FACTS

11. Plaintiff had requested a treaty transfer to his home country, Ukraine.

12. On August 29, 2022 at 11:42am, Plaintiff started the administrative remedy process to try to get his case manager, Defendant Breece, to do the paperwork.

13. The administrative remedy was never answered and Defendant Breece had never filed the paperwork.

14. Plaintiff barely speaks English and all of his family is in Ukraine.

15. On Wednesday, September 28. 2022 between 6:00 - 6:30am, Case Manager Breece gave Plaintiff his unit team papers, but didn't explain anything and Plaintiff can't read the English words.

16. Because Breece didn't explain the papers, Plaintiff refused to sign them.

17. She became visibly angry. At approximately 8:00 to 8:30am, Breece went to unit M-A to see Defendant Canarozzi.

18. A few hours later Defendant Canarozzi issued Plaintiff a fake incident report for threatening him. However, the "threat" was that if he didn't provide him with a BP-8 or BP-9, he would proceed to Court. Normally, this shot doesn't warrant SHU placement.

19. At approximately 11:30-11:45am, two officers came into Plaintiff's unit and put him in the Special Housing Unit. This was authorized by Defendant T. Smith.

20. The "threat" in question was made on September 19, 2022. For 9 days there was no problem.

21. He did not receive the incident report until October 12, 2022, even though by BOP policy he was supposed to receive it within 24 hours.

22. Plaintiff gave Defendant Canarozzi a BP-8 and that same day he returned it without a response.

23. While in the SHU, on October 10, 2022 or October 11, 2022, Plaintiff fell and went into a coma.

24. Plaintiff was taken to the hospital escorted by Defendant Pate. Pate told the medical officers that Plaintiff was faking and that he only had about 1 hour to stay in the hospital, then he must take him back to FCI Danbury.

25. On the trip back, Officer Pate assaulted Plaintiff. He struck Plaintiff with a closed fist, and grabbed him roughly with unnecessary force shoved Plaintiff against the transport vehicle's wall.

26. Defendant Pate stated that Plaintiff was faking his medical issues.

27. Pate's attacks caused Plaintiff's body to bruise and his skin was all black and blue.

28. The following morning, Plaintiff saw the social worker Ms. R. Adamson and she asked why Plaintiff was covered in bruises.

29. Due to this medical issue, Plaintiff was not able to talk for about 20 days. He demonstrated to the social worker that he was assaulted. She told him that was not good.

30. On October 14, 2022, he was released from suicide watch and all of the inmates around the compound and his housing unit asked him "Why are you all blue?" and "Who fought you?"

31. While in suicide watch, Unit Manager Smith and Counselor Bozek came into suicide watch to sanction him to 30 days loss of commissary.

32. She did not give him any paper / pencils (because he couldn't talk) to explain himself or present a defense.

33. She didn't give him any paperwork regarding the decision.

34. She knew that Plaintiff needed liquid foods and needed to buy teas and soups from commissary due to his need to recover from his sickness.

35. Previously, Dr. Caverly, the chief psychologist and Dr. Huber, a staff psychologist, stated that they knew he was sick and needed liquid foods and so they said that they would only take his phone, computer, or visitors, not take his commissary. Unit Manager Smith was aware of this and still took his commissary anyway.

36. From October 14 to 24, 2022, Plaintiff tried to appeal his incident report to Defendant Smith, but she refused to accept the BP-8 and threatened to send him back to the SHU.

37. In November 2022, likely as a result of Plaintiff's assault, he started experiencing severe pain. He felt as if his internal organs were on fire.

38. Plaintiff had trouble sleeping and eating because everything hurt.

39. On November 7, 2022 or November 8, 2022, Defendant Escobar called Plaintiff into his office and began to scream at Plaintiff because "Lieutenants called me at 2 o'clock at night and disturbed me."

40. Defendant Escobar then said, "I don't care if you die. You will die." He repeated this between 5-10 times.

41. Plaintiff understood he was trying to provoke him, but sat there quietly.

42. Escobar ended up prescribing Plaintiff Senna 8.6mg tablets. Apparently it was for constipation according to the label.

43. Plaintiff did not complain of bowel movement issues or constipation, he

complained of chest pain, kidney pain, etc.

44. When Plaintiff first arrived, Dr. Escobar told him, "I saw your criminal case. You punish people. Now I will punish you. Now you have a huge problem."

45. Plaintiff used to take 900mg of the painkiller, Gabapentin, for his spinal problem for years.

46. Escobar changed his medication that had been working for years to Liryka 125mg.

47. Plaintiff sent numerous cop-outs to Defendant Escobar via the Prison's electronic mailbox stating that Lyirka does not work and to please put him back on the Gabapentin which did work.

48. Plaintiff has also sent numerous other cop-outs regarding his pain and other issues along with filing administrative remedies regarding the same, but Defendants have continuously ignored his requests.

49. Dr. Greene was aware of all of Plaintiff's problems.

50. When Plaintiff was on a 17 day hunger strike and his body started to shut down, Dr. Greene and Defendant Escobar were involved in his treatment.

51. Dr. Greene also co-signs all of the medical files, sick call requests, and from his personal interactions with Plaintiff, all show he was personally aware.

52. Plaintiff is emotionally and physically sick, and is in constant pain.


COUNT I - Deliberate Indifference

53. Plaintiff realleges and reincorporates all of the previous declarations.

54. Plaintiff engaged in a 17 day hunger strike from September 28, 2022 to October 14, 2022, to protest the conspiracy by the Defendants to place him in the SHU.

55. For those 17 days he did not take his medication, lost 35 pounds, lost his voice, and ended up in a coma.

56. Plaintiff was stressed out due the fact that he can't speak, and he had to

testify in his brother's §2255 hearing (and didn't know if he would be able to), he couldn't talk to his family, and because the administration and jail staff were conspiring against him and punishing him.

57. Plaintiff has a myriad of medical issues that include 4 stints in his heart, a heart attack, diabetes, eye issues, fungal infection, and severe pain.

58. He has been hospitalized for and treated for all of these issues in prison (for example, in February of 2022, while in BOP custody, he received 2 stints in his heart).

59. The medical defendants are all aware of these issues because they are documented in his medical file.

60. He has made many many sick call requests and cop-outs to medical staff regarding his continued and ongoing problems, and they failed to respond.

61. Plaintiff has also not seen a cardiologist since he received his two other stints.

62. Plaintiff had been in FCI Danbury for 18 months at this point, and still has not seen a cardiologist.

63. Officer Pate telling the hospital that they only had 1 hour to see Plaintiff when he clearly was experiencing a medical crisis also shows his callous disregard for Plaintiff's medical condition.

64. The Medical defendants, by refusing to take Plaintiff to a cardiologist to see whether or not the stints are in properly or if the problem is fixed, is a clear disregard for Plaintiff's health and life. They also never investigated his loss of voice.

COUNT II - Excessive Force

65. Defendant Pate had used force on a sick inmate who was extremely weak and fatigued from a hunger strike even though the Plaintiff did not resist.

66. Defendant Pate's excessive force caused bruising, discoloration, and pain all over Plaintiff's body.

67. Plaintiff did nothing to provoke such a response except for go to the hospital to be treated for his very serious medical needs.

68. Defendant Pate's use of force was unwarranted, unnecessary, and needlessly and maliciously caused Plaintiff pain.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


## PRAYER FOR RELIEF

Plaintiff prays that this Honorable Court would grant relief in that:

A. Declaratory Relief in that Defendants issue Plaintiff a formal apology and accept responsibility for their actions;

B. Injunctive Relief in that if FCI Danbury won't treat Plaintiff's medical conditions, that they instead transfer him to a medical facility;

C. Injunctive Relief in that Defendants and their successors be enjoined from retaliating against Plaintiff;

D. Compensatory damages in the amount of $2,500,000.00;

E. Punitive damges in the amount of $2,500,000.00;

F. Any other relief this Honorable Court feels is just and appropriate.


Executed on this 10 day of August, 2023

Respectfully Submitted,

*YAROSLAV CHURUK*

Yaroslav Churuk